UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-8961 PA (SSx) | | Date | February 19, 2016 |
|---|---|---|---|---|
| Title | United States ex rel. Vatan v. QTC Medical Services, Inc., et al. | | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Stephen Montes Kerr | Not Reported | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**   IN CHAMBERS – COURT ORDER

Before the Court is a Motion to Dismiss (Docket No. 30) filed by defendants QTC Medical Services, Inc., QTC Management, Inc., QTC Holdings, Inc. (collectively "QTC"), and Lockheed Martin Corporation ("Lockheed"). Defendants challenge the sufficiency of the Second Amended Complaint ("SAC") filed by relator David Vatan ("Relator"). Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that these matters are appropriate for decision without oral argument. The hearing calendared for February 8, 2016, is vacated, and the matters taken off calendar.

**I.   Background**

Relator filed his initial Complaint under seal on November 19, 2014. The Complaint alleged violations of the False Claims Act ("FCA") against QTC and Lockheed (collectively "Defendants"), arising out of Defendants' review of veterans' medical files. The United States filed a Notice of Election to Decline Intervention on August 3, 2015, and the Court lifted the seal. Relator filed a First Amended Complaint on September 8, 2015. After Defendants filed a motion to dismiss the First Amendment Complaint, the parties stipulated to the filing of the SAC, which Relator filed on December 14, 2015.

Relator is a medical doctor who worked as a Claims File Analyst ("CFA") for QTC. (SAC ¶ 11.) QTC, a wholly owned subsidiary of Lockheed, is a private contractor which provides medical record review and medical disability evaluation services to government agencies such as the Department of Veterans Affairs ("VA"). (Id. ¶¶ 14, 16.) Relator's SAC alleges that when Defendants were contracted to review the claim files of Vietnam War veterans, Defendants submitted false claims for payment.

During the Vietnam War, the United States employed a highly toxic herbicide and defoliant known as Agent Orange. (Id. ¶ 21.) Exposure to Agent Orange causes diseases such as Chronic B-cell Leukemia ("BCL"), Ischemic Heart Disease ("IHD"), Parkinson's Disease ("PD"), and Early-Onsent Peripheral Neuropathy ("PN"). (Id. ¶ 24.) Pursuant to federal law, whenever the National Institutes of Health establish that a disease can be scientifically linked to Agent Orange, the VA is required to re-adjudicate the claim files of any veteran exposed to Agent Orange. (Id. ¶ 22.) When reviewing a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-8961 PA (SSx) | Date | February 19, 2016 |
|---|---|---|---|
| Title | United States ex rel. Vatan v. QTC Medical Services, Inc., et al. | | |

veteran's claim file, the VA is obligated to consider not only the claims explicitly made by the veteran, but also any other entitlement to benefits which can be supported by evidence in the veteran's record. (Id. ¶ 26.)  The VA frequently enters into contracts with QTC to review veterans' claim files. (Id. ¶ 14.)

While Relator was employed by QTC, two separate reviews of veterans' claim files occurred. First, pursuant to a class action settlement in Nehmer v. United States Veterans' Administration, QTC reviewed approximately 64,000 claim files to determine the effective date and proper disability rating of three Agent Orange presumptive conditions: IHD, PD, and BCL ("Nehmer Review"). (Id. ¶¶ 31-32.) Second, in April 2014, based on a medical redefinition of PN, QTC reviewed approximately 95,000 files for signs of PN ("PN Review"). (Id. ¶¶ 33, 90.)  During the PN review, QTC had to re-review files that had already been examined during the Nehmer Review. (Id. ¶ 90.)  QTC was paid between $300 and $350 for each claim file that it reviewed. (Id. ¶ 48.)

As part of each review, QTC first determined whether the veteran had the requisite Vietnam service, and then reviewed the veteran's claim and symptom history to see if any of the veteran's claims were eligible for re-adjudication. (Id. ¶ 36.)  The VA provided QTC with a screening checklist which contained a step by step process by which QTC could review files and provide an independent medical opinion as to whether a veteran's claim file was eligible for re-adjudication. (Id. ¶ 36, Ex. 1.)  QTC employed a two-tier review system for the Nehmer and PN Reviews. (Id. ¶ 85.)  First, CFAs conducted a first-level review of the claim files and completed the VA-mandated checklist. (Id.) Next, medically-licensed physicians ("Physicians") reviewed and signed off on the CFA-completed checklists. (Id.)

Relator contends that Defendants created and executed a scheme to incentivize CFAs and Physicians to review as many files per day as possible, despite the fact that such rapid review increased the likelihood that files may be incorrectly processed. (Id. ¶ 48.)  Defendants emphasized and rewarded only the speed with which a claim was reviewed, but not the accuracy or completeness of the review. (Id. ¶ 65.)  Relator identifies the following representative examples as evidence of Defendants' scheme and its consequences:

- CFAs purported to review as many as 38 claim files in a single day. (Id. ¶ 67.)
- Physicians often reviewed over 60 claim files per day. (Id. ¶ 86.)
- When Relator submitted voluminous claim files which had taken him several hours to review, a reviewing Physician would sign off on Relator's work within ten minutes. (Id.)
- One CFA, who was not the Relator, observed a Physician signing off on checklists without even opening the associated claim files. The CFA confronted the Physician. Later, after the Physician reported the incident, the CFA was threatened with disciplinary action. The Physicians were also moved to an area where CFAs could no longer see them. (Id. ¶¶ 73-75.)
- Another CFA, who also was not the Relator, accidentally attached between ten and fifteen checklists to the wrong claim files. Reviewing Physicians approved each of these checklists without noticing that they did not match the attached claims fie. (Id. ¶ 86.)

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-8961 PA (SSx) | Date | February 19, 2016 |
|---|---|---|---|
| Title | United States ex rel. Vatan v. QTC Medical Services, Inc., et al. | | |

- In November 2014, Relator learned that the VA had returned 184 claim files to QTC because the checklist had not been completely filled out. After this incident, QTC sent an email reminding CFAs to ensure that they properly completed checklists. (Id. ¶ 88.)
- Finally, during the PN Review, Relator observed how claim files had been reviewed during the earlier Nehmer review. Relator identified six claim files which he contends should have, but were not, referred to the VA for further adjudication. (Id. ¶¶ 92-93.)

Relator also raises serious concerns about the qualifications and training of CFAs. (Id. ¶¶ 40-41, 53-58.) Many of the CFAs were high school graduates with little or no previous exposure to medical records or diagnostic criteria. (Id. ¶ 53.) CFA training focused exclusively on formal claims that veterans had submitted, to the exclusion of potential claims which could be inferred from symptoms evidenced in the claim files. (Id. ¶ 41.) Further, CFAs only received training on the computer data entry process so that they knew how to properly fill in data fields, but did not receive substantive training on how to recognize signs or symptoms of the Agent Orange related diseases. (Id. ¶ 40.) Finally, Defendants had access to VA-provided materials about how to analyze claim files, but did not provide those materials to CFAs. (Id. ¶¶ 56-58.) Instead, Defendants created internal documents which contradicted and overrode the actual guidance provided by the VA. (Id. ¶ 44.)

On October 6, 2014, Relator communicated his concerns about Defendants' review of the claim files to multiple individuals in QTC's organization, including a Human Resources Director, the CEO, and the President of Operations, as well as an Ethics Officer employed by Lockheed. (Id. ¶ 100.) In response, Relator was told that he was creating a disruptive work environment. (Id. ¶ 101.) Shortly after his complaint, Relator was placed on a productivity improvement plan which required him to review twelve cases for every eight hours he worked or be subject to disciplinary action. (Id.) In November 2014, Relator once again voiced his concerns over Defendants' review process. (Id. ¶ 102.) Defendants then began an investigation of Relator's actions and informed him that he would be referred to a Lockheed committee for disciplinary action. (Id. ¶ 103.) Relator filed his initial Complaint, under seal, on November 19, 2014. (Docket No. 1.) On December 4, 2014, Relator was placed on paid administrative leave pending an investigation, and on December 10, 2014, his employment was terminated. (SAC ¶ 105.)

Based on this course of conduct, the SAC alleges claims for: (1) knowingly presenting or causing to be presented, a false or fraudulent claim for payment in violation of 31 U.S.C. § 3729(a)(1)(A); (2) knowingly making, using, or causing to be made or used, a false record or statement material to a false or fraudulent claim in violation of 31 U.S.C. § 3729(a)(1)(B); and (3) retaliation in violation of 31 U.S.C. § 3730(h). Defendants now move to dismiss the first and second causes of action for failure to state a claim.

**II.     Legal Standard**

Generally, plaintiffs in federal court are required to give only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). While the Federal Rules allow

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-8961 PA (SSx) | Date | February 19, 2016 |
|---|---|---|---|
| Title | United States ex rel. Vatan v. QTC Medical Services, Inc., et al. | | |

a court to dismiss a cause of action for "failure to state a claim upon which relief can be granted," they also require all pleadings to be "construed so as to do justice." Fed. R. Civ. P. 12(b)(6), 8(e). The purpose of Rule 8(a)(2) is to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957)). The Ninth Circuit is particularly hostile to motions to dismiss under Rule 12(b)(6). See, e.g., Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 248–49 (9th Cir. 1997) ("The Rule 8 standard contains a powerful presumption against rejecting pleadings for failure to state a claim.") (internal quotation omitted).

However, in Twombly, the Supreme Court rejected the notion that "a wholly conclusory statement of a claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery." Twombly, 550 U.S. at 561, 127 S. Ct. at 1968 (internal quotation omitted). Instead, the Court adopted a "plausibility standard," in which the complaint must "raise a reasonable expectation that discovery will reveal evidence of [the alleged infraction]." Id. at 556, 127 S. Ct. at 1965. For a complaint to meet this standard, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 555, 127 S. Ct. at 1965 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure §1216, pp. 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action") (alteration in original)); Daniel v. County of Santa Barbara, 288 F.3d 375, 380 (9th Cir. 2002) ("'All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.'") (quoting Burgert v. Lokelani Bernice Pauahi Bishop Trust, 200 F.3d 661, 663 (9th Cir. 2000)). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S. Ct. at 1964–65 (internal quotations omitted). In construing the Twombly standard, the Supreme Court has advised that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009).

The more stringent pleading requirements of Federal Rule of Civil Procedure 9(b) apply to allegations of fraud. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "[W]here a complaint includes allegations of fraud, Federal Rule of Civil Procedure requires more specificity including an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (quoting Edwards v. Marin Park, Inc., 356 F.3d 1058, 1066 (9th Cir. 2004)). "'To comply with Rule 9(b), allegations of fraud must be specific

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-8961 PA (SSx) | | Date | February 19, 2016 |
|---|---|---|---|---|
| Title | United States ex rel. Vatan v. QTC Medical Services, Inc., et al. | | | |

enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'" Id. (quoting Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001)). When attempting to satisfy the 9(b) standard to allege an FCA claim with sufficient particularity, a plaintiff need not "identify representative examples of false claims to support every allegation . . . ." Ebeid ex rel. United States v. Lungwitz, 616 F.3d 993, 998 (9th Cir. 2010). Instead, "it is sufficient to allege 'particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted.'" Id. at 998-99 (quoting United States ex rel. Grubbs v. Kanneganti, 565 F.3d 180, 190 (5th Cir. 2009)).

**III.     Discussion**

    **A.     False Claims Act**

The FCA imposes liability upon any person who:

    (A)    knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or]
    (B)    knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

31 U.S.C. § 3729(a)(1)(A)-(B). The statute further defines "knowing" and "knowingly":

    (1)    the terms "knowing" and "knowingly" –
        (A)    mean that a person, with respect to information –
            (i)    has actual knowledge of the information;
            (ii)    acts in deliberate ignorance of the truth or falsity of the information; or
            (iii)    acts in reckless disregard of the truth or falsity of the information; and
        (B)    require no proof of specific intent to defraud . . . .

Id. § 3729(b)(1)(A)-(B).

      "[A] false claim may take many forms, the most common being a claim for goods or services not provided, or provided in violation of contract terms, specification, statute, or regulation." United States ex rel. Wilkins v. United Health Grp., Inc., 659 F.3d 295, 306 (3d Cir. 2011). The FCA "attaches liability, not to underlying fraudulent activity, but to the 'claim for payment.' What constitutes the FCA offense is the knowing presentation of a claim that is either fraudulent or simply false." United States ex rel. Hopper v. Anton, 91 F.3d 1261, 1266 (9th Cir. 1996) (internal citation omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-8961 PA (SSx) | Date | February 19, 2016 |
|---|---|---|---|
| Title | United States ex rel. Vatan v. QTC Medical Services, Inc., et al. | | |

"The essential elements of an FCA claim are (1) a false statement or fraudulent course of conduct, (2) made with requisite scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." United States ex rel. Lee v. Corinthian Colleges, 655 F.3d 984, 992 (9th Cir. 2011). To be liable under the FCA, a party must make "a palpably false statement, known to be a lie when it is made." United States ex rel. Hendow v. Univ. of Phoenix, 461 F.3d 1166, 1172 (9th Cir. 2006). However, "[i]t is not the case that any breach of contract, or violation of regulations or law, or receipt of money from the government where one is not entitled to receive the money, automatically gives rise to a claim under the FCA." Hopper, 91 F.3d at 1265.

Here, Relator alleges that veterans' claim files were reviewed by underqualified and undertrained CFAs, who incorrectly reviewed claim files because of their emphasis on speed over accuracy. The claim files were then put through another level of review by Physicians, who once again reviewed claim files at a rate which compromised accuracy, and compounded earlier errors by relying on checklists prepared by CFAs. Relator maintains that when Defendants requested payment for files reviewed in this manner, they made a false claim within the meaning of the FCA.

### 1. Factually False Claims

Relator's Opposition clarifies that the SAC's primary theory of liability is that Defendants submitted factually false claims to the VA. (Opp'n, 3.) "'A claim is factually false when the claimant misrepresents what goods or services'" were provided to the government. United States ex. rel. Campie v. Gilead Scis., Inc., No. C-11-0941 EMC, 2015 WL 3659765, at *8 (N.D. Cal. June 12, 2015) (quoting Wilkins, 659 F.3d at 305). This occurs when the government is charged for "an incorrect description of goods or services provided or a request for reimbursement for goods or services never provided." Id. (citing Mikes v. Straus, 274 F.3d 687, 697 (2d Cir. 2001)).

To substantiate his claim that Defendants submitted factually false claims, Relator repeatedly refers to Defendants' failure to perform under the contract. (E.g., SAC ¶¶ 38, 42, 65, 110, 112.) For example, Relator alleges that Defendants acted "with willful disregard for accuracy or completeness of the review as required by its contract." (Id. ¶ 65.) However, at no point in the SAC does Relator identify what degree of accuracy is required by Defendants' contract with the VA. In fact, Relator has not pleaded any of the contractual terms most relevant to his claims, such as how accurate Defendants' review was expected to be, or the qualification and training requirements for CFAs.[1] Therefore, the Court cannot assess whether Defendants either misrepresented the services they provided, or received reimbursement for services that they never provided. The SAC alleges what Relator speculates the terms of the contract to be, and explains how Defendants' performance falls short relative to those imaginary contractual requirements. This is insufficient under to state a claim under the FCA. See Wilson, 525 F.3d at 378 ("An FCA relator cannot base a fraud claim on nothing more than his own

---

[1] Moreover, the Ninth Circuit has held that allegations of "improper[] training . . . do not establish a false claim under the FCA. At best, the allegations permit an inference that a breach of contract occurred." United States ex rel. Reiber v. Basic Contracting Servs. Inc., 578 F. App'x 693 (9th Cir. 2014).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-8961 PA (SSx) | Date | February 19, 2016 |
|---|---|---|---|
| Title | United States ex rel. Vatan v. QTC Medical Services, Inc., et al. | | |

interpretation of an imprecise contractual provision."). Relator's conclusory allegations, unsupported by specific contractual terms, fail to satisfy Relator's burden at the pleading stage. See Ebeid, 616 F.3d at 1000. Therefore, Relator has failed to state a claim under the FCA.

Furthermore, without knowing what the contract requires from Defendants, Relator cannot adequately plead that Defendants acted with the necessary scienter. See Hendow, 461 F.3d at 1172 (requiring "a palpably false statement, known to be a lie when it is made" to satisfy the scienter requirement). "The FCA specifically takes aim at knowing falsity, not at negligent misrepresentation. The statutory phrase 'known to be false' does not mean scientifically untrue; it means a lie." Gonzalez v. Planned Parenthood of Los Angeles, 759 F.3d 1112, 1115 (9th Cir. 2014) (internal citation and quotations omitted). Without knowing what Defendants represented to the VA about the product they were providing, Relator's pleadings do not allow the Court to determine whether Defendants have made any palpably false statements, much less whether Defendants knew them to be lies at the time that they were made.

Put differently, if at the close of discovery Relator could demonstrate that 1%, or 5%, or even 10% of claim files had been incorrectly reviewed, the Court would still have no basis to determine that Defendants had intentionally and knowingly failed to meet their contractual obligations. The review process which Defendants were contracted to perform required CFAs and Physicians to review hundreds of thousands of pages of dense medical records. As a result, it was a near certainty that some of the claim files would be incorrectly reviewed. All of the examples identified in the SAC further confirm that the QTC review process resulted in claim files being incorrectly reviewed. The problem for Relator is that to state a claim under the FCA, he must show that Defendants misrepresented the service which they provided. See Wilkins, 659 F.3d at 305. The SAC offers no indication that Defendants have done so.

### 2. Legally False Certifications

Relator also appears to allege that Defendants are liable under the CFA for making legally false certifications. A legally false certification occurs when "a government contract or program required compliance with certain conditions as a prerequisite to a government benefit, payment, or program; the defendant failed to comply with those conditions; and the defendant falsely certified that it had complied with the conditions in order to induce the government benefit." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 786 (4th Cir. 1999). Legally false certifications may be either express or implied. An express false certification occurs when there is an actual certification of compliance made by the claimant "as part of the process through which the claim for payment is submitted." Ebeid, 616 F.3d at 998. An implied false certification occurs when the claimant "seeks and makes a claim for payment from the Government without disclosing that it violated regulations that affected its eligibility for payment." Wilkins, 659 F.3d at 305.

Hopper provides an example of why Relator's legally false certification theory also fails. 91 F.3d at 1263. There, a relator alleged that a school district had violated the FCA by submitting requests

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-8961 PA (SSx) | Date | February 19, 2016 |
|---|---|---|---|
| Title | United States ex rel. Vatan v. QTC Medical Services, Inc., et al. | | |

for funding which included allegedly false statements. Id. at 1265. The Ninth Circuit held that the funding requests did not create liability under the FCA because the form requesting payment did not include any "false certification of compliance which creates liability when certification is a prerequisite to obtaining a government benefit." Id. at 1266. The Ninth Circuit further clarified that this was a "fatal defect" because "certification of compliance was not a sine qua non of receipt of state funding." Id. at 1267.

Here, Relator has taken inconsistent positions regarding the exact false certifications made by Defendants. (Compare SAC ¶ 6 ("[QTC] required its claims file analysts to submit false certifications of the existence or nonexistence of material elements of the review."); Id. ¶ 58 (". . . the certifications and representations in the checklists . . .") with Opp'n, 2 ("The completion of the checklist was not the sine qua non of the contract. It was merely the documentation of a substantive process that resulted in a physician's Independent Medical Opinion."); SAC ¶ 112 ("In submitting claims, Defendants also expressly and impliedly certified to the VA that the claim was submitted for services performed in compliance with the contractual obligations.").) Regardless of these inconsistencies, just as in Hopper, Relator cannot allege that any false information contained in the checklists amounted to a false certification where the Relator also admits that the completion of the checklist was not a prerequisite for the government's payment of funds. See Hopper, 91 F.3d at 1267. Further, to the extent that Relator alleges that a false certification existed somewhere within Defendants' claim for payment, Relator has not alleged any facts, such as the existence of a contractual term or statutory regulation, showing that such a certification was a prerequisite to payment. The Court finds that these are fatal defects to Relator's FCA claims. See Hopper, 91 F.3d at 1263; see also United States ex rel. Steury v. Cardinal Health, Inc., 625 F.3d 262, 268 (5th Cir. 2010) ("The prerequisite requirement recognizes that unless the Government conditions payment on a certification of compliance, a contractor's mere request for payment does not fairly imply such certification.").

      **B.**    **Leave to Amend**

When assessing whether leave to amend is proper, courts consider "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." U.S. ex rel. Lee v. SmithKline Beecham, Inc., 245 F.3d 1048, 1052 (9th Cir. 2001) (internal citations and quotations omitted). However, "[f]utility of amendment can, by itself, justify the denial of a motion for leave to amend." Id.

In his First Amended Complaint, Relator alleged that Defendants' used checklists to review claim files "solely for the purpose of expediting the review process." (FAC ¶ 95.) After Defendants' Motion to Dismiss Relator's First Amended Complaint (Docket No. 24) clarified that the checklists were created by the VA and a contractually-required component of the review process, Relator filed a Second Amended Complaint altering that portion of his allegations. Relator's Second Amended Complaint also attached as exhibits several documents which were part of Defendants' Motion to Dismiss. Therefore, Relator's amendment evidenced that he was not previously privy to the terms of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-8961 PA (SSx) | Date | February 19, 2016 |
|---|---|---|---|
| Title | United States ex rel. Vatan v. QTC Medical Services, Inc., et al. | | |

Defendants' contract with the VA. Further, Relator's Opposition contends that Exhibit 5 to the SAC is "the entire contractual obligation" for Defendants' review of claim files. (Opp'n, 9.) Because Relator has failed to identify any provisions contained in that contract which would evidence that Defendants' review process resulted in a false claim, and because Relator's earlier complaint evidences that he was not privy to the requirements of Defendants' contract, the Court finds that further amendment would be futile.

**Conclusion**

For all of the foregoing reasons, the Court grants Defendants' Motion to Dismiss the SAC. Relator's first and second causes of action are dismissed with prejudice. Defendants shall file their Answer to the SAC no later than March 7, 2016.

IT IS SO ORDERED.